# Sloss-Sheffield Steel & Iron Company v. Ralston.

## *Injury to Servant.*

### (Decided April 4, 1912. 58 South. 260.)

1. *Master and Servant; Injury to Servant; Duty to Warn of Danger.*—Where a master permits the use of dynamite for the loosening of salamander in a blast furnace, it will be presumed that the master or person in charge of the work is familiar with the danger, latent or patent ordinarily accompanying the business he has in charge, and it is his duty to inform a servant of the latent dangers of which he had knowledge, or of which he is presumed to know, and of which the servant has no knowledge, and where no knowledge can be imputed to him; it also being his duty to warn of obvious danger which the servant is not presumed to appreciate or understand.

2. *Same; Negligence; Jury Question.*—Where the servant is injured by the premature explosion of dynamite used to remove salamander from a blast furnace, it was a question for the jury whether the order of the superintendent, that no water should be placed on the material to cool it, previously given, extended down to the time of the injury, and whether the failure to apply the water, or to sufficiently cool the mass, caused or contributed to the premature explosion.

3. *Words and Phrases; Salamander.*—The unfused material which accumulates in the bottom of a furnace while it is in operation, is called salamander, and must be removed periodically.

APPEAL from Birmingham City Court.

Heard before Hon. ROBERT N. BELL.

Action by Isaac Ralston against the Sloss-Sheffield Steel & Iron Company for injuries received from an explosion of dynamite while engaged in its employment. Judgment for plaintiff and defendant appeals. Affirmed.

TILLMAN, BRADLEY & MORROW, and L. C. LEADBEATER, for appellant. The defendant was entitled to the affirmative charge on the first count, as the theory of that count was not supported by the evidence.

HARSH, BEDDOW & FITTS, for appellee. The question of whether or not the first count was supported by the evidence was one for the jury, and the court properly denied the defendant the affirmative charge as to that count.—*Sloss-S. S. & I. Co. v. Green,* 159 Ala. 182; *Bessemer L. & I. Co. v. Campbell,* 168 Ala. 612. It is the duty of the master to inform his servant of the particular perils and danger of the service.—*Robinson M. Co. v. Tolbert,* 132 Ala. 466; *L. & N. v. Boland,* 96 Ala. 632; *Holland v. L. & N.,* 91 Ala. 444; *Percy v. Marsh,* 25 Ala. 613; Bailey (M. & S.) 109; Wood (M. & S.) secs. 335 and 354.

MAYFIELD, J.—Plaintiff, appellee here, was an employee of appellant's, and at the time of the injury. was engaged in cleaning out an iron furnace, or in removing therefrom what is called, in furnace parlance, "salamander." Salamander is the unfused material which accumulates in the bottom of the furnace while it is in operation, and which must be removed periodically; and for this purpose it is necessary, of course, that the furnace be shut down or put out of blast, from time to time, in order to allow this mass of molten matter to cool and be removed. This usually requires a month or more. This salamander, as it cools, becomes very hard, and, as it is usually from five to seven feet in depth, it is difficult to remove. It has to be picked or blasted out, as is stone from a quarry. In the process of cooling, the salamander cracks, and crevices form therein, to certain depths, as far as it cools. In these crevices or cracks, dynamite is placed and discharged, in order to blow out and break up the solidified mass.

Plaintiff was foreman of the squad of men who were engaged in removing the salamander from a furnace of

the defendant; but all the men, including the plain‑
tiff, were under the supervision and control of a super
intendent named Norris, upon whose negligence plain‑
tiff mainly relies for recovery.

On the occasion in question, a charge of dynamite
was placed in one of the cracks in the salamander by
one of the men engaged in the work; and the charge
unexpectedly and prematurely exploded, killing the
man who placed it and severely injuring the plaintiff.
The cause of this premature explosion is the disputed
question, and the one upon which the right of recovery
depends.   It is contended by the plaintiff that it was
the result of the negligence  of  the  superintendent,
Norris, in declining to allow plaintiff and his co-worker
to sufficiently cool the salamander, by pouring water
upon it, to prevent the premature explosion of the dy‑
namite placed in the crevices.   On the other hand, it
is claimed by the defendant that it was either an in‑
evitable accident, or the result of the negligence of
plaintiff or of the man who placed the dynamite, or
that of some other servant, for whose act the defend‑
ant was not liable in this action.

These issues were made clear cut by the pleadings;
and the only error insisted upon was the refusal of the
court to instruct the jury to find for the defendant, if
they believed the evidence.

It is not insisted that the use of dynamite on the
occasion, for the purpose indicated, was per se negli‑
gence on the part of any one; but it has been repeated‑
ly affirmed by this and other courts that "it cannot be
questioned that the use of dynamite is a peculiarly
hazardous business, in which very great care should
be taken to prevent accidents.   It is very properly stat‑
ed by Mr. Bailey:   'It is presumed the master, or the
person placed in charge of a hazardous business or de‑

partment thereof, is familiar with the dangers, latent
or patent, ordinarily accompanying the business he had
in charge.' It is his duty to inform the servant of
latent dangers, of which he has knowledge, or of which
he is presumed to know, of which the servant has no
knowledge, and where no knowledge can be imputed
to him, and also of obvious dangers, which the servant
is not presumed to appreciate or understand. 'He
should inform himself of the particular perils and
dangers of the service.'—Bailey's Master's Liability for
Injuries to Servants, 109; Wood's Master and Servant,
§§ 335, 354."—*Robinson v. Tolbert*, 132 Ala. 466, 31
South. 519.

There is no dispute that Norris, the superintendent,
declined to allow the mass to be cooled by pouring
water upon it; but it is not certain or beyond dispute
as to when he so declined—whether it was several
weeks before the injury occurred, and when the mass
was very hot, when it would have been dangerous to
pour water upon it, as testified by Norris, or whether
such declination or refusal was repeated, or the order
continued of force down to the time of the injury, or
whether it was after the salamander had cooled suffi-
ciently to allow the use of water with safety.

We think the court properly declined to take this
question from the jury. There was evidence from
which the jury might infer that this order not to use
water continued in force and was not withdrawn down
to the time of the injury, or after water could and
should have been used to cool the mass; and, if negli-
gence not to have so used the water, that it was the neg-
ligence of the superintendent, Norris, as is contended
by appellee, and not that of the boss, the plaintiff, as
is contended by the appellant. It was likewise a ques-
tion of fact for the jury whether or not a failure to ap-

ply the water, or to sufficiently cool the mass, caused or contributed to the unexpected and premature explosion of the charge of dynamite.

Norris, the superintendent, as a witness for the defendant, testified in part as follows: "I could not say, when dynamite is heated, that it goes off without some jar. I never did stay to see whether it went off or not. I have studied the subject pretty closely; it will go off, when heated, without any jar sometimes. It will go off easy when it is warmed. I have learned that. I don't know that it will go off when the air is shut off, and it is heated, without any apparent jar; it will go off easier when heated than when cold. It has been known to go off without any jar—no cause for it, of course. I do not know that it goes off easier when the air is shut off; I never heard it put that way. I heard some eight or nine years ago that a car of dynamite exploded out at North Birmingham, while it was being burned. It has been known to go off without any jar, when it has been heated. It is dangerous to put dynamite in a heated place to explode it; it is liable to go off before you are ready for it to go off. The salamander was warm, a little bit warm on top; you could sit down on it. It was five feet to the ground in the center, and none of the salamander had been taken out at that time."

One W. H. Lane, a witness for plaintiff, testified in part as follows: "As to putting water on it, if you are going to do very much blasting about it, they generally cool it off so they can work, you know. Of course, where you put the holes in there—if you put a hole in there, it gets hotter. It is hotter down in two foot than it is on top, you know; and if you put water in you put it in after the hole is drilled; turn the hose on it for two or three hours, sometimes not for so

long. If it is cool, they don't use water. I have known those chills where the top of it might be where you could sit down on it and go to sleep on it; but two feet down toward the bottom it might be also red. The time to put water on it, if you put water, is before you use the dynamite, of course. Of course, you would let it cool off a little, and let the steam go away. The water does not go down in the chill at all. It goes down in the sand in the bottom. You could put water on it for 30 days, and not get it perfectly cool. You could pour water on it for 30 days, and yet when you drill a hole that would be hot down there. The top might be as cool as that table, and the bottom so hot you could not put your hand on it. The water would not soak into the iron to amount to anything."

One J. M. Moody testified in part as follows: "I have had 30 years' experience in the use of dynamite. I have been handling dynamite about 15 years, and am familiar with its qualities and what it will do under given circumstances. I have not had any experience in using it in the bottom of furnaces after they have been in blast and then cooled off. Usually dynamite is set off with an exploder, a little cap, by making a jar. It can be set off by other jars. I do not think it will go off without some jar; but I have had it to go off in a hot hole. It blew a finger off of me one day; had been put in a hot hole. At the time, there was nothing but the loading stick I was loading the hole. That is the only time I have known that to go off without a cap. I was not tamping it very hard; I always try to be very careful with it. I have tried to study the qualities of dynamite from the time I have used it. I believe it will go off a good deal quicker when it is hot than when it is just normal; I mean a less jar. It

will take a less jar to put it off when it is hot than when it is cold."

The plaintiff, in his own behalf, testified in part as follows: "I have helped clean out furnaces before. I have seen furnaces cleaned out with water about right straight off. I never seen one cleaned without water before in my life. I asked Mr. Norris twice about putting water in to slack the lime, cool it out, and he said, 'No, we had plenty of time to get it out,' and I went on without water. The niggers were sprinkling, and he came and stopped it. He said: 'God damn it, get shovels and clean it out.' * * * Mr. Norris would not allow us to put water over the scaffold, to flow around. On the occasion I was hurt, the dynamite exploded. I put part of the dynamite in there, and the nigger put part in there. The nigger was working for the company. I don't know that anybody struck or hit the dynamite in any way; they didn't as I know of. I don't recollect it. That nigger didn't strike it. I was not there exactly all the time. I was there at the time of the explosion. I was standing down, right up on top, right at the crack. It went off while I was standing there," etc. This testimony, we think, was sufficient to carry the issues above mentioned to the jury; and the court properly declined to give the affirmative charge for the defendant.

Affirmed. All the Justices concur.